[Cite as *Muckensturm v. Muckensturm*, 2012-Ohio-3062.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**

**MARK MUCKENSTURM,**

    **PLAINTIFF-APPELLANT,**           **CASE NO. 5-11-38**

    **v.**

**VALERIE MUCKENSTURM,**           **O P I N I O N**

    **DEFENDANT-APPELLEE.**

**Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2009 DR 00280**

**Judgment Affirmed**

**Date of Decision: July 2, 2012**

**APPEARANCES:**

    *Frederic E. Matthews* **for Appellant**

    *Drew J. Mihalik* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Plaintiff-Appellant, Mark Muckensturm ("Mark"), appeals the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, granting a divorce from Defendant-Appellee, Valerie ("Valerie"). On appeal, Mark contends that the trial court abused its discretion when it ordered him to pay spousal support of $1,000 per month for eleven years. For the reasons set forth below, the judgment is affirmed.

{¶2} The parties were married on June 22, 1989, and three children were born as issue of the marriage. Two of their daughters were already emancipated when the parties separated and filed for divorce in July 2009. The third daughter was emancipated in May 2011, prior to the final judgment entry/decree of divorce. The couple had been married for nearly 22 years at the time of the February 8, 2011 divorce hearing, which was the date the trial court specified as the date for the termination of their marriage.

{¶3} On October 13, 2009, the magistrate issued temporary orders, designating Mark as the residential parent of the minor child and ordering him to pay Valerie $600 per month spousal support, pursuant to the parties' agreement. Several mediation sessions were held, and the final hearing was postponed several times before being held on February 8, 2011.

{¶4} At the hearing, the magistrate heard testimony from Mark, Valerie, and a C.P.A. Agreed upon stipulations were read into the record. The parties stipulated that the value of the home was $239,000, subject to a $168,000 mortgage, with monthly payments of $1,392. The parties' also stipulated that there were credit card balances of $20,049 in Valerie's name and $15,940.63 in Mark's name, as of the date of the hearing. The proceeds of the sale of the home were to be used to pay off the credit card balances, with Mark assuming responsibility for any balances left owing if the proceeds were not sufficient.[1] (Tr., pp. 53-54)

{¶5} Mark also had a 401(k) plan with a current value of $64,192, subject to a $12,000 loan that Mark had taken out to pay expenses during the pendency of the divorce. There were no other significant marital assets,[2] although Mark would be eligible for a pension from his employer, Westfield Insurance, with a projected monthly benefit of approximately $1,481 at age 65. At the time of the hearing, Mark was 55 years old, and Valerie was 53.

---

[1] During his testimony, Mark discussed withdrawing this stipulation, saying that if he had to sell the house through a "short sale" and did not receive sufficient funds to pay off all of the credit card debt, that he would declare bankruptcy and that Valerie should be responsible for the debt that was in her name. (Tr., pp. 68-69). In the final decision, the trial court ordered the disposition of the home and credit card debt as was originally discussed in the initial stipulation.

[2] The other marital assets that were used valued for purposes of dividing the parties marital assets were two life insurance policies, with values of $3,457 and $3,500 each; two lawn tractors worth $450, a 1996 Cougar worth $3,500 and an 1982 Yamaha worth $900. Mark also had a separate savings account of $16,500 from an inheritance in 2003. Valerie had inherited $10,000 at one time, but the money was used to purchase furniture for the parties' home.

{¶6} Mark had also stipulated that he would pay the $455 monthly cost of Valerie's medical insurance for three years under COBRA. (Tr., p. 61) He offered to pay $300 monthly spousal for three years, but Valerie had not agreed.

{¶7} The testimony at trial concerned mostly financial matters. Valerie had been a homemaker throughout the marriage, she had only a high school diploma (and one quarter of college in1977), and she had forgone working outside of the home at a full-time job in order to raise their three children. (Tr., p. 117) Mark acknowledged that Valerie was "a fantastic mom." (Tr., p. 107) The most income that Valerie had ever earned from her part-time jobs was approximately $9,000 in 1999 or 2000. (Tr. p. 62) She was currently working as a substitute Head Start assistant teacher, at $9.52 an hour, and had earned $2,577 in 2010. Valerie had worked for Head Start for six years and her income during this time was fairly comparable to what she had earned in 2010. (Tr., p. 125) Valerie had never held a job that provided benefits and she had no retirement savings or programs.

{¶8} Mark handled most of the finances during the marriage. Valerie generally did not have money made available to her and she was required to use credit cards if she needed to purchase groceries, or items for the home or for their daughters. (Tr., p. 120) The couple's spending pattern had been to charge all of their expenses on credit cards and then to pay them off as much as they could when Mark received his annual bonuses.

{¶9} Mark had been a management employee at Westfield Insurance for many years, but he was now working as a "field technician." He testified that his salary has been steadily declining due to the bad economy and that company profitability had declined. (Tr., pp. 84-85) The record shows that Mark's highest gross income was $110,096 in 2005, and then it declined as follows: $100,301in 2006; $84,228 in 2007; $83,957 in 2008; $81,720 in 2009; and $76,898 in 2010. (Plaintiff's Exhibit A; Joint Exhibit 1) Although Mark was eligible to take early retirement at age 55, he planned to continue to work if his health would allow it. (Tr., p. 71) Mark stated that he was suffering from "post-concussion syndrome" from a fall two years ago. (*Id.*)

{¶10} Grover Rutter, a C.P.A. with experience in financial valuations, testified as a witness for Mark concerning a report Mr. Rutter had prepared, which was admitted as Plaintiff's Exhibit A. The report calculated how much money was available to Mark from his annual earnings, after payment of taxes and other withholdings, and what was left after household and living expenses for himself and his daughters were paid. (Tr., pp. 14-15) The report showed Mark had an average net monthly income of $5,600 over the past seven years, and $4,984 for 2010. Based upon his calculations, Mr. Rutter concluded that Mark's expenses, including the $600 temporary spousal support payments, exceeded his income by "an average" of $310.34 per month. (Tr., p. 25)

{¶11} On March 23, 2011, the magistrate filed a detailed decision including findings of facts, conclusions of law, and recommendations. The major decisions that had not been settled between the parties involved the division of property/debt and spousal support. After calculating all of the assets and liabilities, the magistrate found that the parties had net assets of $85,369, consisting mostly of $64,192 in Mark's 401(k) plan. The magistrate recommended that division of the property should assign $43,000 in net assets to Valerie ($36,000 from the 401(k) plan; a $3,500 vehicle; and a $3,500 life insurance policy). The remainder of the assets and liabilities, including the home and the credit card debts, were to be assigned to Mark, giving him $42,369.24 in net assets. The marital portion of the Westfield pension was to be equally divided by QDRO.

{¶12} As to spousal support, Mark's monthly obligation was to be $1,000 monthly for eleven years, until Valerie turned 65. For the first 36 months, the obligation would be satisfied by Mark paying Valerie $545 per month spousal support and paying the $455 COBRA payments. The magistrate recommended that the trial court retain jurisdiction to modify the award if there was a substantial change of circumstances.

{¶13} Mark filed objections to the magistrate's decision raising numerous issues. The trial court overruled all of Mark's objections, except for one minor modification due to the fact that the property division was not equal, having

awarded Valerie $630.76 more than Mark. The trial court adopted the magistrate's decision in its entirety, except for a slight adjustment to equalize the property division. As to the spousal support award, the trial court stated:

> After a careful review of the Magistrate's Decision and a reading of the submitted transcript, the Court finds independently that the Magistrate considered the applicable subsections of R.C. 3105.18(C), and, in doing so, came to a valuation of spousal support that was both reasonable and appropriate considering the circumstances of this particular marriage. Specifically, the Court finds highly crucial the Magistrate's consideration of the relative earning abilities of the parties and the lost income production capacity of [Valerie] as a result of her role as homemaker and primary caregiver. See R.C. 3105.18(C)(b) and (m). The Court is also mindful of [Valerie's] age, work history and other relevant criteria, including the fact that a significant portion of the spousal support will be dedicated to the payment of health care coverage for three years.
>
> It is also important to note that the Magistrate recommended that the support last for a limited period of time with the Court retaining jurisdiction over this issue in the event of a substantial change of circumstances.

(Aug. 26, 2011 Decision, pp. 3-4)

{¶14} On September 29, 2011, the trial court filed its final Judgment Entry/Decree of Divorce, incorporating most of the recommendations set forth in the magistrate's decision. It is from this judgment that Mark timely appeals, raising the following assignment of error for our review.

## Assignment of Error

**The trial court's decision requiring [Mark] to pay spousal support of $1,000.00 per month for eleven years was an abuse of discretion.**

{¶15} Mark contends that the trial court's order to pay spousal support was an abuse of discretion for the following reasons: (1) it ordered spousal support without knowing Valerie's need, (2) the amount of spousal support was unsustainable based on Mark's disposable income, (3) the trial court failed to impute income to Valerie even though she was voluntarily underemployed, and (4) it abused its discretion in ordering him to pay spousal support for eleven years. Mark is not challenging the fact that spousal support was awarded but he is disputing the amount and duration.

{¶16} Trial courts are granted broad discretion concerning awards of spousal support. *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 706 (2d Dist.1996); *Siekfer v. Siekfer*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶ 15. *See, also, Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). Their orders will not be reversed on appeal absent an abuse of that discretion. *Id.* An abuse of discretion is more than an error in judgment; it signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011-Ohio-38, ¶ 9 (3d Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court will be found to have abused its discretion

when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9-10-57, 2012-Ohio-45, ¶ 13, citing *State v. Boles*, 2d Dist. No. 23037, 2010–Ohio–278, ¶ 17–18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Blakemore; Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶17} R.C. 3105.18 governs the trial court's award of spousal support and requires the court to consider fourteen factors set forth in R.C. 3105.18(C)(1) when determining whether spousal support is "appropriate and reasonable," and when determining the nature, amount, terms of payment, and duration of the support. *Strasburg v. Strasburg*, 3d Dist. No. 2-10-12, 2010-Ohio-3672, ¶ 26. The factors are as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

**{¶18}** The record reflects that the magistrate carefully considered every required statutory factor and the applicable facts that were pertinent to each factor. The Magistrate's Decision stated:

[Mark] has earned $80,000 to $100,000 over the past few years, while [Valerie's] highest earnings throughout the marriage were less than $9,000 and the most recent years were less than $3,000. See

-10-

R.C. 3105.18(C)(1)(a). [Valerie] works in an area that will require additional education to increase her hours or wages, but she has made little attempt to look for other employment. * * * [Mark] is now 55 years of age, and [Valerie] is 53 years of age; they have been married for 21 years. See R.C. 3105.18(C)(1)(c), (3). The parties will share in the retirement benefits acquired during the marriage * * *. See R.C. 3105.18(C)(d) Both participate in the social security system. *Id.* The responsibility for minor children is not at issue. See. R.C. 3105.18(C)(1)(f). There was no evidence that either obtained any degrees during the marriage. See R.C. 3105.18(C)(1)(j). [Valerie] indicated plans to return to college for further education, and she last attended college more than 30 years ago. See R.C. 3105.18(C)(1)(k). * * * [Valerie] did lose some income capability as a result of her extended period as homemaker during the marriage. See R.C. 3105.18(C)(1)(m). Mark will have the tax benefit of deductibility of spousal support for tax purposes. See R.C. 3105.18(C)(1)(*l*). The parties' standard of living, although appearing significant based on the income level and value of the home, was artificially maintained through overspending and borrowing. See R.C. 3105.18(C)(1)(g). The Magistrate finds relevant that [Mark's] expenses are substantial, which affects his ability to pay spousal support. See R.C. 3105.18(C)(1)(n).

(Mag. Dec., Mar. 23, 2011, pp. 8-9). Furthermore, the magistrate stated that "although a former spouse's need is not specifically cited in the statutory standard, the award certainly relates to the financial circumstances of the parties, i.e., the financial needs and abilities, and the court can consider those circumstances." (*Id.*, p. 8)

{¶19} The first issue Mark raises asserts that the trial court abused its discretion when it ordered spousal support without knowing Valerie's need. He claims that the trial court was not provided with any information concerning Valerie's monthly net income and expenses. Therefore, he contends that it could

not have appropriately considered Valerie's need versus his ability to pay without more evidence establishing her specific need.

{¶20} Mark's arguments center on his belief that Valerie failed to establish a need for spousal support. However, while "need" was previously the criterion for spousal support under the old statutory scheme, under R.C. 3105.18, as modified in 1991, need alone is no longer the basis for a spousal support award. *Jordan v. Jordan*, 3d Dist. No. 5-03-07, 2003-Ohio-7116, ¶ 14, citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 626 (9th Dist.1999). "It is not significant whether the spouse 'deserves' the support; the only relevant question is what is 'appropriate and reasonable under the circumstances.' * * * Further, once the factors of R.C. 3105.18 have been considered, the amount of spousal support is within the sound discretion of the trial court. * * *" *Jordan*, quoting from *Schindler v. Schindler*, 9th Dist. No. 18243, 1998 WL 46764 (Jan. 28, 1998). *Accord Tinney v. Tinney*, 2d Dist. No. 19906, 2004-Ohio-1160, ¶ 20. While a trial court may still consider any factor it considers relevant, including need, a party's "need" is not specifically one of the enumerated factors set forth in R.C. 3105.18, nor is it the primary standard against which to evaluate the factors, as it was prior to 1991.[3] The amended statute directs a trial court to use the factors to determine

---

[3] The prior version of R.C. 3105.18 set forth 11 factors for determining whether "alimony" was "necessary" in Section (B), stating that "In determining whether alimony is *necessary* and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following * * *." (Emphasis added.) *See Hoyt v. Hoyt*, 53 Ohio St.3d

whether spousal support is "appropriate and reasonable," not whether it is "necessary." *Chaudhry v. Chaudhry*, 9th Dist. No. 15252, 1992 WL 74204, *3 (Apr. 8, 1992).

{¶21} While it may have been preferable for the trial court to have provided more information concerning how it specifically determined the amount of spousal support it awarded,[4] we find that it explained in detail its rationale for awarding spousal support based upon the fourteen factors required by the statute. Although the trial court did not have the specific figures as to Valerie's exact expenses and current income, it had more than sufficient information to determine the disparity between the parties' incomes, the fact that Valerie's earning ability was hampered by her years spent as a homemaker, and how the other statutory factors were relevant.

{¶22} In the second issue raised, Mark complains that the amount of spousal support ordered was unsustainable based upon his disposable income. In order to prove that he could not afford to pay even the $600 temporary spousal support, he submitted records and offered the testimony of Mr. Rutter to

177, 179 (1990); *Chaudry*, *supra*. The current, amended statute states: "In determining whether spousal support is *appropriate and reasonable*, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors * * *." (Emphasis added.) R.C. 3105.18(C)(1).

[4] The record also shows that the trial court was hampered by the parties' own failure to provide the requested information, and the trial court reprimanded both of the parties for their lack of preparation prior to the hearing. (Tr., p. 40) The matter had been pending since July 2009; final hearing date had already been postponed two times; the parties had twice gone to mediation and represented to the court that agreements had been made; they had not followed the court's instructions to mediate a third time; Valerie had not provided the court with the requested information/affidavit of her income, assets, and expenses; and, neither party had filed a pre-trial memo as ordered by the court. (Tr., pp. 40-41)

demonstrate that his expenses exceeded his income. Mark testified that he was only able to pay for the temporary spousal support during the pendency of the divorce by borrowing from his 401(k) plan.

{¶23} We do not find this argument to be persuasive for several reasons. First, a significant portion of Mark's listed expenses included large payments for the home mortgage, credit card payments, and related expenses (i.e., over $100 a month for storage of household items in order to "stage" the home for sale). Many of those expenses are likely to be eliminated, or greatly reduced, when the house is sold and the credit card balances are paid off, or paid down.

{¶24} Furthermore, Mark's net, after-tax take home pay in 2010 averaged nearly $5,000 per month. His complaints concerning his "deficit spending" did not take into account the likelihood that he might have to reduce his expenditures. The trial court found that "neither party testified to any efforts on their part since their July 2009 separation to curb their spending or take other steps to plan for their future, other than [Mark's] reference to filing bankruptcy." (Mag. Dec., p. 9) The Ohio Supreme Court has long noted that "[t]he standard of living achieved by the parties during their marriage is often altered upon termination." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988).

{¶25} The record clearly indicates that the trial court did take Mark's expenses and financial situation into account when deciding on the spousal

support award. Pursuant to R.C. 3105.18(C)(1)(n), the magistrate found it "relevant that [Mark's] expenses are substantial, which affects his ability to pay spousal support." (Mag. Dec., p. 9) The trial court also acknowledged that Mark paid for the parties' adult children's expenses and that he has assumed his children's educational expenses. (*Id.*) Mark's arguments concerning this issue are not persuasive.

{¶26} Next, Mark asserts that the trial court failed to impute income to Valerie even though she was "voluntarily underemployed." Mark complains that the testimony at the hearing indicated that Valerie "had no desire or ambition" to improve her employment prospects and had "taken no steps of any kind to improve her employment prospects." (Appellant's Brief, p.13) He maintains that it was an error to base the spousal support on Valerie's part-time income when she could have earned at least $15,000 if she obtained a full-time job.

{¶27} First, as discussed above, an award of spousal support must be based upon a number of factors beyond just need. The trial court made it clear that the primary considerations in the award of spousal support were the relative earning abilities of the parties and the lost income production capacity of Valerie as a result of her role as homemaker and primary caregiver. (*See* Aug. 26, 2011 Decision, pp. 3-4.) The trial court also considered Valerie's age and work history. (*Id.*)

{¶28} Moreover, Mark utilized selective quotations from the record to support his assertion that she was making no effort to increase her income. However, a reading of the entire record in context demonstrates that she did hope to find a job that would provide more income, although she was concerned about her ability to do so.

> Q.   But, if given the opportunity to have a full-time job with benefits, would you welcome that opportunity?
>
> A.   Yes.
>
> * * *
>
> Q.   Is it your intention to get education and job training for you to achieve a full-time job?
>
> A.   I would definitely have to if I want to ever obtain any job that was going to give me any benefits.

(Tr., pp. 128-129).   The record also indicated that she testified that she liked to work; that she had held four part-time jobs at one time; that she was considering going back to school, and that she had applied for some jobs since the divorce was filed but had not been hired.   She testified that she had applied for a full-time position where she was working now, but they had not hired her.   (Tr., p. 142)

{¶29} Given the facts that Valerie was going to initially receive only $545 per month in cash spousal support[5] and that she had no other liquid assets, it will be very difficult, if not impossible, for her to support herself unless she increases

---

[5] For the first 36 month, the remaining $455 of the spousal support award of $1,000 per month was to be received by way of paid COBRA insurance premiums.

her efforts to find a job that will pay better and provide benefits. Under the facts and circumstances of this case, it was not necessary for the trial court to impute any income to Valerie pertinent to its finding that an award of spousal support was "reasonable and appropriate."

{¶30} In the final issue raised, Mark alleges that the trial court abused its discretion when it ordered him to pay spousal support for eleven years, until Valerie's 65th birthday. He contends that it was unreasonable for the trial court to order him to pay spousal support for a period of time that was more than one-half the length of the marriage, especially when taking the other factors in the case into account.

{¶31} Again, we find the record demonstrates that the trial court carefully considered the needs and the circumstances of the parties when deciding upon the duration of the spousal support award, and based it upon the length of the marriage, the parties' ages, and their proximity to retirement.

> The period of the award is based upon the standard retirement age, although that standard shifts with the parties' ages. * * * This length of payment is based upon the length of marriage, the parties' ages and the limited potential for the defendant to meaningfully re-enter the marketplace between now and retirement.

(Mag. Dec., p. 9)

{¶32} The Ohio Supreme Court has held that, generally, spousal support awards should not be indefinite, but should terminate upon a date certain. *Kunkle*

*v. Kunkle*, 51 Ohio St.3d 64, at paragraph one of the syllabus. However, potential exceptions to this rule include cases involving "a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home." *Id.* Therefore, "a marriage of long duration 'in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of *Kunkle*.'" *Vanke v. Vanke*, 93 Ohio App.3d 373, 377 (10th Dist.1994). In *Bowen v. Bowen*, *supra*, the Court of Appeals found that the parties' marriage of twenty years was one of long duration that qualified as a *Kunkle* exception to the requirement of a definite termination date, and cited to numerous other cases where no abuse of discretion was found in allowing for an indefinite award of spousal support in marriages of similar duration as the parties' marriage in this case.

> See *Berthelot* (twenty years); *Soley v. Soley* (1995), 101 Ohio App.3d 540, 550, 655 N.E.2d 1381, 1388 (twenty years); *Vanke*, 93 Ohio App.3d at 376, 638 N.E.2d at 632 (twenty-two years); *Leversee v. Leversee* (Mar. 25, 1993), Franklin App. No. 92AP-1307, unreported, 1993 WL 87005 (twenty-one years); *Corpac* (twenty-five years); *Schmidt v. Schmidt* (Oct. 8, 1991), Franklin App. No. 91AP-547, unreported, 1991 WL 325788 (twenty-two years).

*Bowen*, 132 Ohio App.3d at 627.

{¶33} Even though the parties' marriage would qualify as one of "long duration," the trial court still established a date certain for the spousal support to

end. Furthermore, the trial court retained jurisdiction over both the duration and the amount of spousal support, in order to take into consideration changes in the parties' circumstances, "including their retirement, the sale of the marital residence, or other income and debt changes." (*Id.*) If there should be a significant change of circumstances, Mark has the option of requesting a modification. *See* R.C. 3105.18(E) and (F). We do not find that the duration of the spousal support constituted an abuse of discretion.

{¶34} The trial court's decision to order Mark to pay spousal support to Valerie was not unreasonable, arbitrary or unconscionable. The trial court carefully considered all of the statutory factors and found numerous reasons, solidly based upon R.C. 3105.18 and supported by evidence in the record, why the award of spousal support in this case was reasonable and appropriate. Based on all of the above, Mark's assignment of error is overruled.

{¶35} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**