[Cite as *Marquart v. Marquart*, 2023-Ohio-1108.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

SHERY MARQUART,

    PLAINTIFF-APPELLEE,          CASE NO. 5-22-24

    v.

DOUGLAS L. MARQUART,          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2006 DR 00298

**Judgment Affirmed**

Date of Decision: April 3, 2023

APPEARANCES:

    *Thomas D. Drake* for Appellant

    *John F. Kostyo* for Appellee

Case No. 5-22-24

**MILLER, P.J.**

{¶1} Defendant-appellant, Douglas Marquart, appeals the August 3, 2022 judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, denying his motion to modify his spousal support obligation to plaintiff-appellee, Shery Marquart. For the reasons that follow, we affirm.

## I. Facts & Procedural History

{¶2} Douglas and Shery were married on August 11, 1984. On July 21, 2006, Shery filed a complaint for legal separation from Douglas. At a September 24, 2007 hearing, Douglas and Shery indicated that they had entered into a separation agreement. By entry filed October 16, 2007, the trial court adopted the separation agreement and granted Shery a decree of legal separation from Douglas. As relevant to this case, the separation agreement provided:

> 1. **(A) Findlay Real Estate:**
>
> [Shery] shall retain, free from any claim of [Douglas], all of the parties' right, title, and interest in and to [the marital residence in Findlay].
>
> * * *
>
> In the event that [Shery] has not sold said property by March 24, 2009, [Shery] shall be required to refinance the mortgage on the property with Citi Mortgage. The Court shall retain jurisdiction over the property until said property is sold or the mortgage is refinanced, whichever first occurs. In the event that [Shery] refinances the mortgage on this property, [Douglas] shall cooperate in her refinancing efforts by signing any necessary documents in conjunction therewith, except for any document that would obligate him for any indebtedness.

-2-

\* \* \*

12. Commencing on October 1, 2007, and continuing for an indefinite period of time thereafter, [Douglas] shall be obligated to pay spousal support to [Shery], by means of wage withholding and direct deposit to an account of [Shery's] at a financial institution designated by her, at the rate of $3700.00 per month, or $1707.70 per pay period.  \* \* \* Said spousal support obligation \* \* \* shall be subject to the following terms and conditions:

(A)  [Douglas's] spousal support obligation shall terminate upon the death, remarriage, or cohabitation of [Shery] with an adult male who is not her spouse and who is not related to her, or upon the death of [Douglas].

(B)  [Douglas's] spousal support obligation may be modified by the Court upon a future change of circumstances, and the Court shall retain jurisdiction over the matter of spousal support indefinitely for that purpose and to enforce all matters relating to spousal support.

(C)  [Shery] shall use her best efforts to take advantage of the resources available to her through the Ohio Bureau of Vocational Rehabilitation \* \* \* and to obtain employment and remain employed so long as she is physically able to do so, or until she is determined to be eligible for Social Security Disability benefits, or until she reaches retirement age under the Social Security law.

(Boldface and underlining sic.) (Doc. No. 56).

{¶3} Following his separation from Shery, Douglas relocated to Tennessee. On June 29, 2011, Douglas filed a complaint for divorce in the Knox County, Tennessee Chancery Court.  On November 1, 2012, the Knox County court granted Douglas a divorce from Shery.  In its entry, the Knox County court specified that "[a]ll other matters and issues between [Douglas and Shery] are subject to the parties' agreed 'Judgment Entry' entered on October 16, 2007 in the Common Pleas

-3-

Court of Hancock County, Findlay, Ohio, Domestic Relations Division, Case No. 2006-DR-298 and shall be dealt with in Ohio." (Douglas's Ex. PP).

{¶4} Shery has rheumatoid arthritis. During her marriage to Douglas, Shery underwent several surgeries to address issues caused by her rheumatoid arthritis, and her condition has not improved as she has aged. In late January 2013, Shery was informed by letter that she was entitled to monthly Social Security disability benefits beginning September 2012. (Shery's Ex. 2). The letter informed Shery that she would receive $408 per month. (Shery's Ex. 2). This amount was subsequently increased to $410 per month, but then reduced to $312 per month as of August 2014. (Douglas's Ex. EE).

{¶5} Around this time, Douglas began reducing his monthly spousal support payments to Shery by $410. Neither Douglas nor Shery requested the trial court modify Douglas's spousal support obligation by this amount, nor did the trial court issue a judgment entry modifying Douglas's spousal support obligation in this way. Yet, Shery never sought to enforce Douglas's full spousal support obligation. In fact, correspondence from Shery suggested that she assented to a reduction in the amount of $312 per month. (Douglas's Ex. GG).

{¶6} On April 12, 2019, Douglas filed a motion requesting a modification of his spousal support obligation. In connection with this request, on January 14, 2020, Douglas filed a motion for impoundment of the spousal support payments. On January 27, 2020, the magistrate granted Douglas's motion and ordered the spousal

support payments be impounded pending resolution of Douglas's motion to modify. Shery subsequently filed a motion for release of the impounded funds, which was denied by the magistrate. Shery objected to the magistrate's decision, and on April 15, 2020, the trial court sustained Shery's objections in part and ordered half of the impounded funds be released to Shery each month.

{¶7} A hearing on Douglas's motion to modify was held before the magistrate over the course of several days on August 28, 2020, October 5, 2020, January 7, 2021, March 30, 2021, and August 10, 2021. On December 6, 2021, the magistrate issued her decision, in which she recommended Douglas's motion to modify his spousal support obligation be denied. However, she recommended that "[e]ffective April 1, 2019, [Douglas] should pay to [Shery] the sum of [$3,388] as and for spousal support, for an indefinite period" and that Douglas "should pay any arrears due to [Shery], for any difference between $3,388 per month and his actual payments, for the period of December 1, 2014 through April 1, 2019." (Doc. No. 190). Thus, by this recommendation, the magistrate did not suggest a modification of Douglas's spousal support obligation as requested by Douglas but rather a formal adoption of the reduction Shery had apparently accepted years earlier after she began receiving Social Security disability benefits (i.e., $312 less per month instead of the $410 withheld by Douglas). Finally, the magistrate recommended the impoundment of spousal support payments be terminated and that all amounts due to Shery be paid to her from the impounded funds.

**{¶8}** Douglas then filed objections to the magistrate's decision. On July 22, 2022, the trial court overruled Douglas's objections. On August 3, 2022, the trial court issued a judgment entry adopting the magistrate's recommendations in their entirety.

## II. Assignment of Error

**{¶9}** On August 23, 2022, Douglas timely filed a notice of appeal. He raises the following assignment of error for our review:

> **The trial court committed an abuse of discretion in limiting the reduction of appellant's spousal support obligation to only $312.00 per month.**

## III. Discussion

**{¶10}** In his assignment of error, Douglas argues that the trial court abused its discretion by adopting the magistrate's recommendations and denying his motion to modify his spousal support obligation. Douglas maintains that, considering his income dramatically declined beginning in 2019 and that Shery made a number of unsound financial and employment decisions after their separation, a substantial reduction in his spousal support obligation was warranted.

### A. Magistrate Decisions & Appellate Review

**{¶11}** "Generally, '[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard.'" *Costilla v. Weimerskirch*, 3d Dist. Hancock No. 5-20-12, 2021-Ohio-165, ¶ 8, quoting *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-

1726, ¶ 31. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶12}** "When reviewing a trial court's disposition of objections to a magistrate's report, [an appellate court] will not reverse the trial court's decision if it is supported by some competent, credible evidence." *O'Connor v. O'Connor*, 10th Dist. Franklin No. 07AP-248, 2008-Ohio-2276, ¶ 16. "'If there is some competent, credible evidence in the record to support the trial court's decision, there is generally no basis for a reviewing court to find an abuse of discretion.'" *Depinet v. Norville*, 3d Dist. Wyandot No. 16-19-04, 2020-Ohio-3843, ¶ 11, quoting *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002-Ohio-5035, ¶ 13.

**B. Spousal Support & Modification**

**{¶13}** We review a trial court's decision regarding spousal support for an abuse of discretion. *Ganues v. Ganues*, 3d Dist. Seneca No. 13-18-36, 2019-Ohio-1285, ¶ 13, citing *Booth v. Booth*, 44 Ohio St.3d 142 (1989). When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶14}** In exercising its discretion to modify a spousal support award, the trial court must determine: (1) that the decree contained a provision specifically authorizing the court to modify the spousal support, and (2) that the circumstances

of either party have changed. R.C. 3105.18(E).[1] Furthermore, the change in circumstances must be substantial, it must make the existing award no longer reasonable and appropriate, and it must not have been taken into account by the parties or the court at the time when the existing award was established or last modified. R.C. 3105.18(F)(1)(a) and (b).

{¶15} According to R.C. 3105.18(F)(1), "a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances * * *." In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all the following factors under R.C. 3105.18(C)(1), which include:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;

---

[1] In actions for legal separation, the trial court does not need to specifically reserve jurisdiction in order to modify spousal support. R.C. 3105.18(D). The trial court only needs to specifically reserve jurisdiction in cases of divorce or dissolution. R.C. 3105.18(E). Here, the spousal support obligation first arose from an action for legal separation, so the decree did not need to contain a reservation of jurisdiction for modification (though it did). However, Douglas and Shery eventually divorced and the court granting the divorce referred back to the separation judgment entry as governing the rights between the parties.

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

**C. The trial court did not abuse its discretion by adopting the magistrate's recommendations and denying Douglas's motion to modify spousal support.**

{¶16} In recommending denial of Douglas's motion to modify his spousal support obligation, the magistrate found, and the trial court did not disagree, that Douglas's drastically reduced income stream was a substantial change of circumstances not contemplated by Douglas and Shery at the time they entered into the separation agreement. Evidence presented at the hearing on Douglas's modification motion showed Douglas's income was approximately $147,385 and $130,364 in 2006 and 2007, respectively. (*See* Magistrate's Ex. AAA). Thus, Douglas was generating significant income around the time he and Shery concluded the separation agreement. In 2019, however, Douglas's income plummeted to approximately $46,445. (*See* Magistrate's Ex. AAA). No evidence was presented suggesting that Douglas and Shery anticipated this drop in Douglas's income. Therefore, competent, credible evidence supports the magistrate's findings regarding the substantiality and unexpectedness of the changes in Douglas's circumstances, and the trial court did not err by accepting these findings.

{¶17} However, the magistrate ultimately recommended Douglas's spousal support obligation not be modified because, notwithstanding the substantial and unforeseen changes in Douglas's circumstances, she found that it remained reasonable and appropriate for Douglas to pay spousal support to Shery as he had been doing so since the informal reduction in 2014. Although the magistrate's

recommendation did not contain a detailed analysis of each of the R.C. 3105.18(C)(1)(a)-(n) factors, it is clear the magistrate considered them insofar as she found them applicable. Specifically, the principal basis for the magistrate's finding that the existing spousal support award remained reasonable and appropriate was that Douglas's net worth had increased significantly since his separation from Shery. *See* R.C. 3105.18(C)(1)(i). The magistrate concluded that, despite Douglas's diminished income, his accumulated assets were more than sufficient for him to both support himself and fulfill his spousal support obligation.

{¶18} Evidence presented at the hearing established Douglas's approximate yearly income from 2008 to 2018 as follows: $226,561 in 2008; $138,530 in 2009; $146,377 in 2010; $180,713 in 2011; $342,206 in 2012; $466,684 in 2013; $344,048 in 2014; $629,767 in 2015; $465,045 in 2016; $177,348 in 2017; and $179,717 in 2018. (*See* Magistrate's Ex. AAA). Thus, following his separation from Shery, Douglas's income increased considerably before declining in 2019. Douglas's increased income resulted in a corresponding increase in his net worth. Although the subject of some dispute between Douglas and Shery, Douglas had a net worth of at least $1,184,632 as of March 19, 2020. (Shery's Exs. 1-1, 10). With other assets factored in, such as the cash value of Douglas's life insurance policy and real estate Douglas received in the separation, and certain liabilities factored out, specifically half of the mortgage indebtedness for investment real estate Douglas co-owned with his fiancé, Douglas's net worth totaled between $1,410,000 and

$1,564,186. (*See* Shery's Exs. 1-1, 10). Of the agreed-upon assets, Douglas's investments in stocks and mutual funds were valued at $572,658 as of March 19, 2020. (Shery's Exs. 1-1, 10). Douglas's less-liquid assets, specifically his real estate holdings and his retirement funds, were valued at $223,000[2] and $526,226, respectively, as of March 19, 2020. (Shery's Exs. 1-1, 10).

{¶19} Accordingly, the record supports that despite his diminished income, Douglas has amassed considerable assets since his separation from Shery. Admittedly, should Douglas's income continue at its 2019 level, Douglas might be required to spend down some of these assets in order to meet his spousal support obligation. We further acknowledge that at least one court has held that where a spousal support obligor would have been required to liquidate his separate assets to continue paying spousal support, continuing the existing spousal support award was not reasonable and appropriate. *See Shivak v. Shivak*, 11th Dist. Trumbull No. 2014-T-0101, 2015-Ohio-5063. However, Douglas's financial position is sufficiently distinguishable from that of the obligor in *Shivak* such that we cannot say that it is categorically unreasonable or inappropriate to require a spousal support obligor to tap into his separate assets to continue paying an existing spousal support award. The parties' assets and incomes are separate considerations under R.C. 3105.18(C)(1), thus allowing for the possibility that spousal support will be found

---

[2] This figure does not include the value ($168,000) of real estate in Bowling Green, Ohio that Douglas received in the separation, or the value of real estate Douglas acquired after March 19, 2020.

reasonable and appropriate where the obligor's accumulated separate assets are substantial but his income is modest or negligible. Like all matters involving spousal support, the appropriateness of requiring an obligor to use his separate assets to satisfy his spousal support obligation will vary from case to case depending on the circumstances. Here, looking at the particular facts of this case, the magistrate determined that it would not be unreasonable or inappropriate for Douglas to satisfy his existing spousal support obligation from a combination of his income and accumulated assets. Given that Douglas was still generating some income, and in light of the magnitude of Douglas's accumulated assets relative to the amount of the existing spousal support award, we conclude that competent, credible evidence supports the trial court's decision accepting the magistrate's determination.[3]

{¶20} Douglas maintains that the trial court and magistrate did not give due consideration and weight to factors militating toward reduction of his spousal support obligation. First, Douglas argues that despite Shery's rheumatoid arthritis, she is capable of maintaining gainful employment. He notes that Shery worked part time at the Findlay YMCA for a number of years after their separation, and he claims that she quit her job at the YMCA for reasons unrelated to her rheumatoid arthritis. He also highlights the testimony of a vocational expert who opined that Shery could

---

[3] As the trial court retains continuing jurisdiction over spousal support in this case, nothing precludes Douglas from seeking modification of his spousal support obligation in the future should his financial position, which might include a change in his assets, constitute a substantial change making it no longer reasonable and appropriate to continue the existing spousal support award.

obtain employment as a receptionist or front-desk clerk in the Findlay area. Douglas thus contends that Shery is voluntarily unemployed and that her unemployment justifies a reduction of his spousal support obligation. *See* R.C. 3105.18(C)(1)(a) and (b). Douglas similarly argues that Shery's poor financial decisions further warrant a reduction of spousal support. In particular, Douglas faults Shery for selling the marital residence and purchasing a new residence, which involved "exchang[ing] a mortgage loan that would be paid off in 9 1/2 years from the date of the legal separation for a mortgage that would last until the year 2038." (Appellant's Brief at 21). He maintains that had Shery "not made this unwise decision, by now she would have been free of mortgage payments for more than five years." (Appellant's Brief at 21). Douglas also claims that Shery "compounded her mistake of extending her mortgage payments until 2038 by failing to make any attempt to take advantage of historically low mortgage rates and refinance her current 6% mortgage." (Appellant's Brief at 6). Finally, Douglas argues that his spousal support obligation should be reduced because the existing award is more than Shery requires for her maintenance. He observes that Shery was current on all her financial obligations even though half of her spousal support payments had been impounded since early 2020.

{¶21} None of Douglas's arguments are persuasive, and the trial court and the magistrate were justified in minimizing these factors when determining whether it was reasonable and appropriate to continue the existing spousal support award.

Here, we are reminded that Douglas's spousal support obligation arose from the parties' separation agreement. "In determining whether to modify an existing order for spousal support, the court shall * * * enforce any voluntary agreement of the parties." R.C. 3105.18(F)(2). The separation agreement in this case required Shery to use her best efforts to remain employed only until the occurrence of one of three events, one of which was a determination of her eligibility for Social Security disability benefits. Shery was determined to be eligible for Social Security disability benefits beginning in September 2012. Consequently, any obligation she had to maintain employment ceased as of September 2012. As entered into by Douglas and Shery and adopted by the trial court, the separation agreement contemplated that even after Shery was deemed eligible for Social Security disability benefits, thereby relieving her of any obligation to be employed, Douglas's spousal support obligation would continue indefinitely. Therefore, Shery's present unemployment cannot serve as a basis for modifying Douglas's spousal support obligation.

**{¶22}** Similarly, the separation agreement envisioned that Shery might sell the marital residence after the separation. Additionally, the only mortgage Shery was obligated to refinance was the mortgage on the marital residence, and even then, that obligation was triggered only if Shery still owned the marital residence on March 24, 2009. Thus, the separation agreement imposed no limitations on Shery's right or ability to purchase a new residence or upon the terms of financing any such purchase. Even so, Douglas agreed to pay spousal support indefinitely to Shery.

-15-

That Shery exercised the latitude afforded her under the separation agreement in a way Douglas believes to be financially irresponsible does not render continuation of the award he agreed to unreasonable or inappropriate. We concur with the trial court in this regard: "This issue is wholly irrelevant * * *. The Judgment entry related to spousal support in no way limits her ability to make financial decisions—whether they are in her best interest or not. In fact, even if her decision was a poor one (on which the Court has no opinion) it would not affect [Douglas's] obligations." (Doc. No. 222).

{¶23} Lastly, the fact that Shery was able to get by with less spousal support from Douglas while half of the payments were impounded does not make it unreasonable or inappropriate to continue the existing award. "It is not significant whether the spouse 'deserves' the support; the only relevant question is what is appropriate and reasonable under the circumstances." *Jordan v. Jordan*, 3d Dist. Hancock No. 5-03-07, 2003-Ohio-7116, ¶ 14. "[N]eed alone is no longer the basis for a spousal support award." *Muckensturm v. Muckensturm*, 3d Dist. Hancock No. 5-11-38, 2012-Ohio-3062, ¶ 20. Accordingly, "'spousal support can be reasonable even if it exceeds the payee's need.'" *Schaaf v. Schaaf*, 9th Dist. Medina No. 05CA0060-M, 2006-Ohio-2983, ¶ 31, quoting *Lewis v. Lewis*, 7th Dist. Jefferson No. 04 JE 8, 2005-Ohio-1444, ¶ 30.

{¶24} In this case, the evidence establishes that since early 2020, Shery has been able to meet her expenses on less than the full spousal support award. Thus,

in the strictest sense, the existing spousal support award has not been necessary to sustain and support Shery. But that does not mean that it is unreasonable or inappropriate to continue the existing award. When they separated, Douglas agreed to sustain and support Shery at a level above that which she was capable of maintaining herself. As previously discussed, Douglas still possesses the means to sustain and support Shery at that standard of living notwithstanding his recent employment difficulties. Furthermore, although Shery testified that all of her financial obligations were current, she stated that she was "not behind in [her] payments, but * * * [would] be here coming up," and she indicated that she might be required to borrow money if she continued receiving less than the full amount of spousal support. (Jan. 7, 2021 Tr. at 424). Under these circumstances, we do not find that the existing spousal support award is no longer reasonable or appropriate.

{¶25} In sum, competent, credible evidence supports the trial court's decision overruling Douglas's objections to the magistrate's decision and adopting that decision in full. Therefore, we conclude that the trial court did not abuse its discretion by adopting the magistrate's decision and denying Douglas's motion to modify his spousal support obligation.

{¶26} Douglas's assignment of error is overruled.

### IV. Conclusion

{¶27} For the foregoing reasons, Douglas's assignment of error is overruled. Having found no error prejudicial to the appellant herein in the particulars assigned

-17-

and argued, we affirm the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division.

**_Judgment Affirmed_**

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**