[Cite as *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011-Ohio-38.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

TIMBERLAKE,

    APPELLANT,                            CASE NO.  9-10-38

    v.

TIMBERLAKE,                           O P I N I O N

    APPELLEE.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 06-DR-198

Judgment Affirmed

Date of Decision:  January 10, 2011

APPEARANCES:

    **Robert E. Wilson**, for appellant.

    **Kevin P. Collins**, for appellee.

**WILLAMOWSKI, Judge.**

**{¶ 1}** Plaintiff-appellant, John Timberlake ("John") appeals the judgment of the Marion County Court of Common Pleas, Family Division, denying his request for modification/termination of spousal-support payments to defendant-appellee, Lisa Timberlake ("Lisa"). John claims that the trial court erred in finding that the modification was barred because the inheritance Lisa received from her parents was a change in circumstances that was contemplated at the time of the original decree. For the reasons set forth below, the judgment is affirmed.

**{¶ 2}** John and Lisa were divorced on January 31, 2007, after 26 years of marriage. John was 49 years old at the time, and Lisa was 51. Their two children were emancipated. The divorce was resolved by agreement with the judgment entry incorporating the terms stated in the "Agreement & Stipulation of the Parties," filed on December 8, 2006 ("the stipulation"). The stipulation provided for the division of all real and personal property, vehicles, bank accounts, retirement plans, and debts. It also provided for the payment of spousal support.

**{¶ 3}** At the time John filed for divorce in June 2006, he was earning approximately $160,000 per year as a sales manager, and Lisa was working part-time for $7.50 per hour. The agreed judgment entry decree of divorce ("the decree") provided that, pursuant to the stipulation, John would pay Lisa spousal support in the amount of $50,000 per year for ten years and one final year of

spousal support at $30,000, for a total 11-year obligation. The decree further stated that spousal support would terminate upon the death of either party or if Lisa remarried or cohabitated with an adult male who was not a family member.

{¶ 4} The stipulation had provided for the trial court to retain jurisdiction over the matter of spousal support, but the decree omitted this provision. In conjunction with his motion for spousal-support termination, John filed a Civ.R. 60(B) motion for relief from judgment to amend the decree to comport with the stipulation. The trial court found that the parties intended for the court to retain jurisdiction over spousal support and granted the motion.[1]

{¶ 5} Shortly after the parties divorced in 2007, Lisa's mother died in January 2008, and her father died in September 2008. They were 83 and 81 years old, respectively, at the time of their deaths. As a result, Lisa and her sister Suzanne each received an inheritance of $1,269,000. On May 20, 2009, John filed a motion to terminate spousal support because of Lisa's inheritance.

{¶ 6} On March 30, 2010, the trial court held a hearing on the motion and heard testimony from Lisa, John, Lisa's sister, Suzanne, and a financial-planning specialist (who testified as to the amount of investment income the

---

[1] John filed his Civ.R. 60(B) motion on March 16, 2010. The trial court ruled on this matter in the April 27, 2010 judgment entry concerning the motion to terminate spousal support that is the subject of this appeal.

inheritance might potentially provide). After hearing all the testimony, the trial court considered whether it had jurisdiction to consider a modification of the spousal-support order by applying the law as stated in R.C. 3105.18 and *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172. In *Mandelbaum*, the Ohio Supreme Court affirmed that a trial court has jurisdiction to modify a prior order of spousal support only if the decree of the court expressly reserved jurisdiction to make the modification and if the court finds that (1) a substantial change in circumstances has occurred and (2) the change was not contemplated at the time of the original decree. Id. at paragraph two of the syllabus.

{¶ 7} The trial court found that it had retained jurisdiction to modify the order and that the large inheritance constituted a substantial change in circumstances. However, the court determined that the second prong of the *Mandelbaum* test was not met because the inheritance was a change in circumstances that was specifically contemplated at the time of the original decree. Therefore, the trial court denied John's motion for modification/termination of spousal support.

{¶ 8} John timely appeals this decision, raising the following assignment of error for our review.

> The Family Court erred in concluding that [Lisa's] inheritance was a change contemplated at the time of the divorce barring a later modification or termination of spousal support.

{¶ 9} A trial court has broad discretion in determining whether or not to modify an existing spousal support award. *Hines v. Hines*, 3d Dist. No. 9-10-15, 2010-Ohio-4807, ¶ 17; *Mottice v. Mottice* (1997), 118 Ohio App.3d 731, 735, 693 N.E.2d 1179. Absent an abuse of discretion, a trial court's decision pertaining to modification of a spousal-support award will not be disturbed on appeal. *Bostick v. Bostick*, 3d Dist. No. 1-02-83, 2003-Ohio-5121, ¶ 8, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error in judgment; it signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. The burden of establishing the need to modify spousal support rests with the party seeking modification. *Tremaine v. Tremaine* (1996), 111 Ohio App.3d 703, 706, 676 N.E.2d 1249.

{¶ 10} The Ohio Supreme Court has long emphasized that an agreement for spousal support that has been entered in a divorce decree by a trial court is entitled to expectations of finality. *Mandelbaum,* 121 Ohio St.3d 433, 2009-Ohio-1222,

905 N.E.2d 172, at ¶ 15, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 415-416, 350 N.E.2d 413 (tracing nearly 100 years of decisions concerning alimony). A trial court will have jurisdiction to modify a prior order of spousal support only if the decree of the court expressly reserved jurisdiction to make the modification and if the court finds that a substantial change in circumstances has occurred *and that the change had not been contemplated at the time of the original decree*. *Mandelbaum*, at paragraph two of the syllabus.

{¶ 11} The trial court found that it retained jurisdiction to review the matter and that Lisa's inheritance constituted a substantial change in circumstances. John's sole assignment of error challenges the trial court's finding that modification or termination of spousal support was precluded because the parties contemplated Lisa's inheritance at the time of the original decree.

{¶ 12} The Ohio Supreme Court has stated that "the change in circumstances must be one that had not been contemplated and taken into account by the parties or the court at the time of the prior order." *Mandelbaum,* 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at ¶ 32. John argues that the stipulation and decree were silent regarding the potential inheritance because there was no way of knowing when it might occur or how much it might actually be. John maintains that an inheritance is something that can be "foreseen" in that it may come to a party someday, but it is "unforeseeable" to know when it will come

or exactly how much it will be. For a contemplated change to exist, he believes that the parties must have some knowledge of a specific time-frame and amount, such as future retirement benefits, where the parties may be aware of the expected age of retirement and the calculation of the monthly benefits.

{¶ 13} John contends that the fact that Lisa's potential inheritance was discussed does not remove the speculative nature of an inheritance in order to make it a "contemplated" event "taken into account" by the parties. John claims that he intended to pay the $50,000 annual support to Lisa only to supplement her income until she received her inheritance. Therefore, he wanted the trial court to reserve jurisdiction to review the support order to determine whether the need still existed to continue the spousal-support payments, based upon the timing and the amount of the inheritance.

{¶ 14} However, Lisa testified that the potential inheritance was contemplated and thoroughly discussed at the time of the divorce negotiations. She also testified that the impact of any inheritance she would receive on an award of spousal support was taken into account and specifically excluded from the settlement agreement. She believed that the trial court would retain jurisdiction over the matter of spousal support only to the extent that it could terminate spousal support as provided for in the decree, i.e., in the event that she remarried or cohabitated.

{¶ 15} John claims that the inheritance was speculative because no one knew when Lisa's parents would die or how much she would inherit. However, Lisa and Suzanne both testified that John was very much aware of the fact that their parents were in extremely poor health and that they had a substantial estate, which the two sisters would inherit. In 2004, the entire family went to Chicago to celebrate what might be their last Christmas together and have a family portrait taken. Lisa's mother, who was over 80 years old and had previously had breast cancer, had been diagnosed with bone cancer. The doctors believed that she might live only three to five years at the most. Lisa's father had suffered a fractured skull, resulting in severe dementia, had had a stroke, and was a heavy drinker and smoker. His prognosis was also poor. At the family gathering, Suzanne, who had been named executor of her parents' estate, shared detailed financial information with Lisa and John concerning their parents' wills, trusts, and assets. Suzanne wanted the entire family to be aware of all the facts, and she testified that she showed Lisa and John a spreadsheet listing her parents' substantial assets. Lisa often had to make trips to Chicago because of her parents' poor health. Lisa and Suzanne also testified that John was knowledgeable about the extent of their parents' wealth, and he had assisted their father in selling his business.

{¶ 16} John generally denied having much knowledge about the parents' poor health or their assets, or he frequently "did not recall" many of the events or

alleged discussions. However, Lisa's and Suzanne's testimony enumerated many specific instances and facts that contradicted John's claims. John's own deposition, taken only a few weeks before the hearing, was used to impeach his testimony. His deposition testimony clearly revealed that he understood that Lisa "would receive a huge inheritance."

> Q. * * * [Were] there discussions about various inheritances between you and Lisa?
>
> A. Before we were divorced, I mean, in negotiating, I talked that I only wanted to pay until her parents died because I knew she would receive a huge inheritance and she wouldn't need my support anymore.
>
> * * *
>
> Q. So your recollection is, there [were] discussions about that there was a large estate that would be coming due if the will stayed as it was, which was half to Lisa and half to her sister?
>
> A. Uh-huh.
>
> Q. And you, according to what you just said, knew that the parents had a lot of money, a lot of assets, going to have a large estate, I mean, you've done the math, you've seen that she got about a million dollars.
>
> A. Yeah. I didn't know how much it was going to be.
>
> Q. But you knew it was substantial?
>
> A. Yes.

{¶ 17} John originally had wanted his spousal-support obligation to terminate when Lisa received her parents' inheritance. However, Lisa strongly

objected to this condition. In his deposition, John testified that the predivorce documents contained terminology stating that spousal-support would terminate when Lisa inherited her parents' money. After continued negotiations between the parties, this language was ultimately removed.

{¶ 18} Although John claims that the timing and the amount of Lisa's inheritance were speculative, there was considerable evidence showing that John knew her parents were very likely to not live much longer and that he had a good understanding as to the significant amount of money Lisa was very likely to inherit. The trial court apparently found Lisa's and Suzanne's testimony to be more credible than John's. The credibility of the witnesses and the weight to be given their testimony are primarily for the trial court's determination. *Tremaine*, 111 Ohio App.3d at 707, 676 N.E.2d 1249.

{¶ 19} John cited cases in which courts have found that an inheritance constituted an unforeseen change of circumstances. See, e.g., *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533. However, the facts in *Howell* and the other case are very different from those in this case. For instance, in *Howell*, the appellant was only a contingent beneficiary of his grandfather's trust fund at the time of the divorce. He had no rights to the trust fund until after the death of both his parents, and there was no information concerning the likelihood of their demise in the near future. We are cognizant of the fact that

there certainly might be situations in which a party's inheritance would constitute a substantial change of circumstances that was not contemplated at the time of the original decree. Every situation may have varying facts and circumstances that can affect the final determination. That is why the trial court is vested with the discretion to review and evaluate the individual merits of each case.

{¶ 20} John also argues about the retroactive applicability of *Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, which was not decided until 2009, to their divorce decree, which was finalized in 2007. However, *Mandelbaum* did not modify the long-standing rule of law that in order to warrant a modification of spousal support due to a change in circumstances " 'the change must be one that is substantial and not contemplated at the time of the prior order.' " *Trotter v. Trotter* (2001), 3d Dist. No. 1-2000-86, 2001 WL 390066, *2, quoting *Tremaine v. Tremaine* (1996), 111 Ohio App.3d 703, 706, 676 N.E.2d 1249. See also *Reveal v. Reveal*, 154 Ohio App.3d 758, 2003-Ohio-5335, 798 N.E.2d 1132, ¶ 14; *Moore v. Moore* (1997), 120 Ohio App.3d 488, 491, 698 N.E.2d 459; *Leighner v. Leighner* (1986), 33 Ohio App.3d 214, 215, 515 N.E.2d 625. In resolving a conflict between the appellate districts, *Mandelbaum* merely affirmed that the 1991 statutory modifications to R.C. 3105.18 *did not change* this long-held tenet of common law. *Mandelbaum* at ¶ 29. *Mandelbaum* primarily focused on whether the change of circumstances still needed to be "substantial." Only three

appellate districts, the Fifth, Ninth, and Eleventh, had failed to continue to utilize the "well-established" standard. Id. at ¶ 29-30. John cannot claim that *Mandelbaum* introduced any new rule of law that would affect his decree.

{¶ 21} John further asserts that it was wrong to equate "contemplated" with a contingency that may have been merely "known and discussed." However, in this case, the contingency of the inheritance was more than just known and discussed. The option of discontinuing spousal support upon Lisa's receipt of the inheritance was known, discussed, negotiated, *and rejected* by the parties in the determination of their final stipulation.

{¶ 22} Both parties have raised some meritorious arguments on appeal. However, whether or not we come to the same conclusion as the trial court, our role is only to review for an abuse of discretion. See, e.g., *Selanders v. Selanders*, 3d Dist. No. 17-08-28, 2009-Ohio-2303, ¶ 33. We must "refrain from the temptation of substituting [our] judgment for that of the trier-of-fact, unless the lower court's decision amounts to an abuse of discretion." *Martin v. Martin* (1985), 18 Ohio St.3d 292, 295, 480 N.E.2d 1112. The trial court's decision was supported by competent, credible evidence and testimony presented at the hearing, and it was not unreasonable, arbitrary, or unconscionable. It was within the trial court's sound discretion to find that Lisa's inheritance was a contemplated change of circumstances that was taken into account by the parties as they were

negotiating their final agreement. Therefore, it is not proper to disrupt the finality of the decree in order to provide John with another opportunity to obtain the terms that he was not able to negotiate in the original stipulation. Appellant's assignment of error is overruled.

{¶ 23} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

ROGERS, P.J., and PRESTON, J., concur.