[Cite as *Develvis v. Develvis*, 2012-Ohio-3067.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

WILLIAM DEVELVIS,

    PLAINTIFF-APPELLEE,           CASE NO. 15-12-01

    v.

BRENDA DEVELVIS,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Domestic Relations Division

Trial Court No. DR 10-05-077

Judgment Reversed and Cause Remanded

Date of Decision: July 2, 2012

APPEARANCES:

    *Joseph A. Benavidez* for Appellant

    *Scott R. Gordon* for Appellee

Case No. 15-12-01

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Brenda Develvis ("Brenda"), appeals the judgment of the Van Wert County Court of Common Pleas, Domestic Relations Division, granting the Motion to Modify Spousal Support and Order the Sale of Land that was filed by Plaintiff-Appellee, William Develvis ("William"). On appeal, Brenda contends that the trial court erred in modifying the spousal support order because she claims that William failed to prove a significant change of circumstances warranting the modification. For the reasons set forth below, the judgment is reversed and remanded.

{¶2} On May 13, 2011, Brenda and William were granted a divorce after thirty years of marriage.[1] The trial court ordered William to pay Brenda $1,000 a month in spousal support for a period of eighty-seven months. The magistrate found that William earned $49,000 in 2010,[2] having worked for the state's transportation department for 30 years, and Brenda was currently unemployed, having worked "side jobs" off and on, once the parties' children were older. (Apr. 1, 2011 Mag. Dec.) Brenda cited personal health concerns and the lack of a substantial work history as barriers to steady and gainful future employment. (*Id*.) The trial court specifically retained jurisdiction over the issue of spousal support.

---

[1] William filed a complaint for divorce in May 2010. The parties appeared for a hearing on February 18, 2011, and the magistrate filed a decision on April 1, 2011. No objections were filed, and the final decree was filed on May 13, 2011.

[2] William stated in his motion that, at the time of the calculation of spousal support, he earned $44,844 per year. There was overtime pay listed on a financial disclosure, but no tax records were in the file. He testified that his W-2 was $45,000 for 2009 and he was making the same salary. (Tr. p. 41)

{¶3} The trial court ordered that the marital residence should continue to be listed for sale, and the net proceeds from the sale were to be divided "50/50." William was entitled to take exclusive possession of the property as of April 18, 2011, and he was to be responsible for paying the first and second mortgages, taxes, utilities and normal upkeep, until the home was sold. He was to be granted credit for any reduction in principal after April 1, 2011. (*Id.*; May 13, 2011 J.E. Decree of Divorce )

{¶4} On July 8, 2011, William filed a "Motion to Modify Spousal Support and Order Sale of Land." William sought to lower the asking price of the property to $85,000, contending that the current asking price of $97,000 was not reasonable. William also asked that the amount of spousal support should be significantly reduced or terminated because his income was not sufficient to pay the expenses he was ordered to pay. He claimed that unexpected and unanticipated changes in circumstances justified a modification in spousal support, including: the increased costs imposed upon him by the trial court; the fact that the court was not aware at the time of the final hearing that Brenda had received $12,970 in checks from AFLAC; and, that approximately $11,000 in liens had been placed on the marital residence due to Brenda's failure to pay credit card debt that she was ordered to pay.

{¶5} Brenda filed a motion in opposition, claiming that neither party had undergone a change of circumstances and that all of William's allegations in support of modification were circumstances that were in existence prior to the divorce decree. She asserted that *if* his circumstances had changed, it was only because of William's voluntary increases in expenses and his decision not to reside at the marital residence and make necessary repairs, even though he had specifically demanded that he be awarded possession of the residence.

{¶6} A hearing on the motion was held before the magistrate on September 16, 2011. The trial court heard testimony from Krista Schrader (the Realtor who had listed the parties' residence), William, and Brenda.

{¶7} Ms. Schrader testified that the home had been on the market for 313 days, and that she believed the residence was no longer worth the $97,000 that was its original appraisal and listing value. (Tr. pp. 4-5) In her professional opinion, she believed that its selling price would probably be about $75,000, and that it should probably be listed for about $87,000. (Tr. p. 9) Some of the factors hampering its sale were the fact that it was vacant, it was in poor condition and needed a lot of work, and there had been tall weeds and uncut grass in the lawn and driveway. (Tr. p. 7)

{¶8} Ms. Schrader also testified that she had received one verbal offer on the property for $75,000, and that she had difficulty getting the parties to agree to

-4-

a price for a counter-offer. (Tr. p. 6) Brenda eventually agreed to a counter-offer of $83,000, but the potential buyers never responded to this offer. (Tr. pp. 7, 13) They told the Realtors they were going to the bank to "finish up their financing," and then the Realtors learned that they could not obtain their financing. (*Id.*)

{¶9} William testified as to his financial circumstances, his income, and his expenses. He claimed that because the house had not yet sold, he could not afford to pay the mortgages and the utilities (especially the winter heat bills), along with spousal support and all of his other expenses. (Tr. pp. 20-22) William testified that he believed $75,000 was a fair market value for the home. (Tr. p. 22) They owed a total of $58,163 on the two mortgages on the property. (*Id.*)

{¶10} Brenda testified that none of the expenses Williams complained about, nor any of the other circumstances that he raised, had changed since the divorce. (Tr. p. 51) In fact, his mortgage payments had gone down. (*Id.*) William confirmed that the first and second mortgages had been refinanced and that the total monthly payments had been reduced from $800 to $444. (Tr. pp. 32-33) Brenda further testified that she was paying on the credit cards through a debt relief program, but that she had lost her job in November 2010 and was only receiving $154 per week in unemployment compensation. (Tr. pp. 48, 49) Brenda believed the value of the home was around $90,000, but reluctantly acknowledged that she would consider a price between $75,000 and $85,000. (Tr. pp. 60-61)

{¶11} On September 30, 2011, the magistrate's decision was filed, recommending that the parties adjust their maximum listing price to $80,000, and that any offer received that was over $74,000 should be deemed reasonable and acceptable. The magistrate also recommended that William's obligation to pay spousal support should be reduced to $500 per month, effective July 8th, subject to the continuing jurisdiction of the trial court.

{¶12} Brenda filed objections to the magistrate's decision, claiming that the decision was against the manifest weight of the evidence and that the issue was not ripe for modification because William failed to show any type of change of circumstances which would warrant a modification of the previous decree. The trial court overruled the objections, and, after an "independent judicial review and consideration of the evidence," it then approved and adopted the magistrate's decision. (Dec. 6, 2011 J.E.) The trial court found that "the modification of spousal support was warranted due to the inability of the parties to sell the former marital premises, due largely to the over-inflated listing price, and the attendant financial burden placed upon [William] in maintaining same, representing a change in circumstances." (*Id.*)

{¶13} On December 12, 2012, the trial court filed its final Judgment Entry, ordering the changes in the real estate listing price and the modification to spousal

support that were recommended in the magistrate's decision. The trial court found the modification was warranted due to a change in circumstances:

> A change in circumstances has occurred relative to the inability of the parties to affect a timely sale of their former marital residence, due in large part to an unrealistic and inflated listing price ($97,000.00). Despite at least one reasonable offer to purchase ($75,000.00), considerably under the listing price, [Brenda] refused same and is holding out for at least $90,000.00. [Brenda's] position might be more acceptable in a more favorable economic climate, particularly if she was financially maintaining the premises. As it is, [William] is servicing both the first and second mortgages, albeit at a negotiated reduced monthly rate notwithstanding taxes, utilities and upkeep.

(*Id.*, ¶ 2). The trial court also stated that "[t]he successful sale of the former marital residence shall be deemed a change of circumstances warranting further review." (Dec. 12, 2012 J.E., ¶ 2.2)

{¶14} It is from this judgment that Brenda timely appeals, raising the following assignment of error for our review.

### Assignment of Error

**The court erred in finding that the Magistrate's Decision was fair, reasonable, and not against the manifest weight of the evidence.**

{¶15} In her single assignment of error, Brenda contends that the trial court's decision was not fair or reasonable, and that it was against the manifest weight of the evidence. Brenda maintains that decision was contrary to R.C. 3105.18(E) and (F) because William failed to prove any significant change in

circumstances had occurred since the divorce decree, which was finalized less than two months prior to when William filed his motion to reduce spousal support. In fact, she submits that his living expenses have decreased. Brenda appeals only the trial court's modification of spousal support, not the orders concerning the lowered listing and acceptable sale price for the marital residence.

{¶16} A trial court has broad discretion in determining whether or not to modify an existing spousal support award. *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011-Ohio-38, ¶ 9 (3d Dist.). Absent an abuse of discretion, a trial court's decision pertaining to modification of a spousal-support award will not be disturbed on appeal. *Bostick v. Bostick*, 3d Dist. No. 1–02–83, 2003-Ohio-5121, ¶ 8, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–Ohio–278, ¶ 17–18 (2d Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 11. The burden of establishing the need to modify spousal support rests with the party seeking modification. *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 706 (2d Dist.1996).

{¶17} The Ohio Supreme Court has long emphasized that an agreement for spousal support that has been entered in a divorce decree by a trial court is entitled to expectations of finality. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, ¶ 15, citing *Wolfe v. Wolfe*, 46 Ohio St.2d 399, 415–416 (1976) (tracing nearly 100 years of decisions concerning alimony/spousal support). A trial court will have jurisdiction to modify a prior order of spousal support only if the decree of the court expressly reserved jurisdiction to make the modification and if the court finds that a substantial change in circumstances has occurred and that the change had not been contemplated at the time of the original decree. *Mandelbaum*, at paragraph two of the syllabus.

{¶18} In this case, the trial court retained jurisdiction to modify spousal support. The issue before us is whether there was a substantial change in circumstances that was not contemplated at the time of the original divorce decree. Furthermore, the change in circumstances must not have been purposely brought about by the party seeking modification. *Hines v. Hines*, 3d Dist. No. 9-10-15, 2010-Ohio-4807, ¶ 16, citing *Roach v. Roach* 61 Ohio App.3d 315, 319, (8th Dist. 1989). *See also* R.C. 3105.18(F) (stating that a "change of circumstances" includes, but is not limited to " * * * any increase or *involuntary* decrease in the party's wages, salary, bonuses, living expenses, or medical expenses.") (Emphasis added.)

**{¶19}** In *Mandelbaum*, the Ohio Supreme Court affirmed the long-standing common law requirement that a trial court is required to find that a *substantial* and *unforeseen* change in circumstances has occurred before modifying a prior order of spousal support, even though amendments to R.C. 3105.18 did not utilize that specific language. *Mandelbaum*, 121 Ohio St.3d 433, ¶ 31. The Supreme Court confirmed its strong interest in finality in these matters, noting that its decisions have long indicated that the change in circumstances must be significant. *Id.* at ¶ 16, citing to *Olney v. Watts*, 43 Ohio St. at 508 (discussing the need for a "material alteration of circumstances" before a change in the rate of alimony may be made). The decision in *Mandelbaum* discussed in detail the "well-established law" and the meaning of what was generally considered "substantial."

> The word "substantial" has been given various meanings by Ohio courts, such as "drastic[ ]," * * * "material," * * * and "significant," * * *. Moreover, the change in circumstances must be one that had not been contemplated and taken into account by the parties or the court at the time of the prior order.

(Citations omitted.) *Id.* at ¶ 32.

**{¶20}** After a thorough review of the record, we do not find that there has been a substantial and unforeseen change of circumstances that would permit the trial court to modify its spousal support decision. The divorce decree was finalized *less than* sixty-days prior to when William filed his motion to modify spousal support. William provided three reasons in his motion to modify, yet

-10-

there had been no change in any of those factors since the divorce hearing. William did not file objections to the original magistrate's decision prior to the final divorce decree, nor did he appeal the final divorce decree.

{¶21} First, William claimed that his "income is not sufficient to pay the expenses ordered to be paid by him" and that he "currently has living expenses of $1,795 before he pays any spousal support." (Jul. 8, 2011 Motion to Modify) Yet, he testified that his income had not changed and his mortgage payments had actually been reduced by nearly $360. (Tr. pp. 27, 32-33) Some of his living expenses were brought about by William's own choices, such as deciding to live with his girlfriend rather than in the marital residence, thereby increasing his expenses with higher gasoline costs (new location was twice as far to his place of employment) and rental payments at his new residence in addition to the payments for the marital home. (Tr. pp. 36-37, 40) Furthermore, it was William who requested that Brenda be ordered to leave the home, and he agreed that he would assume all responsibility for the property. (Tr. pp. 35, 55)

{¶22} The other two reasons given by William in his motion were that Brenda had received AFLAC payments, and that two debts in Brenda's name had been reduced to judgment with liens placed against the property. However, Brenda had received the AFLAC money due to an injury in the past and she was no longer receiving it. And, the liens had been placed on the property in February

2011, several months before the final hearing.[3]  (Tr. p. 49; Plaintiff's Exhibits 2 and 3)

**{¶23}** In the judgment entry, the trial court stated that a "change in circumstances has occurred relative to the inability of the parties to effect a timely sale of their former marital residence, due in large part to an unrealistic and inflated listing price ($97,000.00)."  (Dec. 12, 2011 J.E.)  However, while this circumstance may have justified granting William's request for a listing and sale price reduction of the home, it does not constitute a "substantial change in circumstances" relative to a modification of spousal support.  William acknowledged that *both* parties had originally agreed to the $97,000 listing price, which was consistent with the court-ordered appraisal on property, and was read into the record in court.  (Tr. pp. 40-41).  Furthermore, the marital residence had already been on the market for 105 days at the time of the divorce hearing, and for nearly 190 days when the final decree was filed.  The fact that it was not going to be sold quickly, especially given the current depressed housing market, was not new information, nor was it any drastic or significant change of circumstances.

---

[3] There was no information in the record as to whether these debts were marital.  Brenda testified that she had been paying on the debts that were the subject of the liens, and that William knew about the situation. (Tr. p. 48).  The information concerning the division of debts in the record is not clear, and the transcript of the divorce hearing was not included.  The divorce decree incorporated Exhibit 2, which listed approximately $34,000 in credit card debts, with approximately $11,000 crossed off, leaving about $22,800 remaining.  The decree ordered Brenda to pay the debts according to Exhibit 2.  Brenda testified that William was to pay her $5,000 (which would appear to somewhat equalize the debt division).  (Tr. p. 48) She testified that she couldn't pay the debts because she "didn't get five thousand dollars from him that he owes me on my half of the debt."  (*Id.*)  The divorce decree does not discuss a payment of $5,000 from William.

{¶24} The judgment entry implies that Brenda had blocked a potential sale of the home, thereby causing William to needlessly carry the burden of paying for the property's expenses.[4]    The trial court stated that "[d]espite at least one reasonable offer to purchase ($75,000.00), considerably under the listing price, [Brenda] refused same and is holding out for at least $90,000.00." However, that statement is not supported by the facts in the record. Although Brenda testified that she *wanted* to get $90,000 so that she could pay the debts she had, she did agree to an $83,000 counter-offer of the one, *verbal* offer for $75,000 that had been received. (Tr. p. 13) And, there was nothing in the record that would indicate that the deal fell through because the price was too high or because of anything that Brenda caused. The potential buyers were not able to obtain financing.

Q.    Did that counter offer get made?

A.    [by Ms. Schrader]  Ah, yes, I went back and verbally told those buyers, or told that Realtor from the office.  He then told those buyers.  They then told us they were going to go to the bank and finish up their financing and then we were told they could not get their financing.

\* \* \*

Q.    [After the Develvis' counter offer] did they ever come back again?

---

[4] There is no information in the record as to when this verbal offer was made on the property.  William did not raise this issue in his motion to modify as a reason justifying the decrease in spousal support.

A.   No, there [was no other] counter offer, they basically said they wanted to go to the bank.

(Tr., pp. 6-7, 14)

**{¶25}** We understand that increased expenses and decreased or divided income/assets due to a divorce may cause budgetary difficulties for both parties. The Ohio Supreme Court has noted that "[t]he standard of living achieved by the parties during their marriage is often altered upon termination."  *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988).   However, the facts in the record do not support a finding that there was any significant change of circumstances that would meet the requirements necessary to justify taking away the expectations of finality associated with a final divorce decree and modifying the spousal support orders.  Based on the above, the assignment of error is sustained.

**{¶26}** Having found error prejudicial to the Appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**