[Cite as *Casteel v. Casteel*, 2012-Ohio-4658.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

JOYCE A. CASTEEL,

    PLAINTIFF-APPELLEE,              CASE NO. 4-12-10

    v.

LARRY K. CASTEEL,                 O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Defiance County Common Pleas Court
Domestic Relations Division
Trial Court No. 05-DR-37337

**Judgment Affirmed**

Date of Decision:     October 9, 2012

APPEARANCES:

    *James K. Weaner and James Hitchcock*  for Appellant

    *Jude T. Aubry*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Larry K. Casteel, appeals the Defiance County Court of Common Pleas' judgment entry denying his motion to issue a new Qualified Domestic Relations Order ("QDRO") in conformity with the parties' final judgment entry of divorce and denying his motion to terminate spousal support following his retirement. For the reasons that follow, we affirm.

{¶2} Larry and Joyce A. Casteel, plaintiff-appellee, were married on January 2, 1968. (Doc. No. 1). On July 28, 2005, Joyce filed a complaint for divorce, alleging gross neglect of duty, extreme cruelty, and incompatibility. (*Id.*). The parties had three children as issue of their marriage, all emancipated at the time of the filing of the divorce complaint. (*Id.*).

{¶3} On August 12, 2005, Larry filed an answer, denying Joyce's allegations of gross neglect of duty and extreme cruelty, admitting incompatibility, and praying for a divorce. (Doc. No. 3).

{¶4} On December 11, 2006, a magistrate granted the parties a divorce, divided the parties' property, and ordered, in relevant part, that Larry pay Joyce $2,800.00 per month in spousal support. (Doc. No. 20). Concerning Larry's First Energy defined pension benefit, the magistrate found that:

> The parties agree that the defined benefit plan should be split equally
>
> through a Qualified Domestic Relations Order. In accordance with

Plaintiff's Exhibit 11, the accrued monthly benefit as of April 1, 2006 is $2,789.50 beginning at age 65[], $1,494.75 to each * * *. The appropriate date for division of the pension is August 25, 2006. The parties shall prepare a separate [QDRO] and to split the costs equally. (*Id.*).

The magistrate also ordered Larry to name Joyce as a beneficiary on his First Energy life insurance policy and to maintain the policy during the existence of his spousal support obligation. (*Id.*).

{¶5} Thereafter, Larry filed objections to the magistrate's decision, specifically objecting to the amount of spousal support and the requirement to name Joyce as the sole beneficiary to his First Energy life insurance policy. (Doc. Nos. 21, 30). The trial court set the matter for hearing on June 7, 2007. (Doc. No. 29). On July 13, 2007, the trial court overruled the objections. (Doc. No. 36).

{¶6} On September 7, 2007, the trial court entered the final judgment entry of divorce. (Doc. No. 37). In pertinent part, the final divorce decree provided that, "Plaintiff shall receive one half of Defendant's FirstEnergy Defined Benefit Plan as of August 25, 2006 by a [QDRO]. The parties shall prepare a separate [QDRO] prepared by Attorney William Kimmelman and split the costs equally." (*Id.*). The trial court further ordered that Larry pay $2,800.00 per month in spousal support to Joyce for the first 24 months, and $2,500.00 per month

thereafter. (*Id.*). Larry was also required to name Joyce as a beneficiary to his First Energy life insurance policy and to maintain said policy while his spousal support obligation was in effect. (*Id.*).

{¶7} On January 18, 2008, a QDRO for Larry's First Energy defined benefit plan was filed with the trial court, with both parties agreeing to the terms therein. (Doc. No. 48). In pertinent part, the QDRO provides, at paragraph seven, the following:

> Amount of Alternate Payee's Benefit Based on "Coverture Approach": This Order assigns to Alternate Payee an amount equal to the actuarial equivalent of Fifty Percent (50.00%) of the Marital Portion of the Participant's Accrued Benefit under the Plan as of the Participant's benefit commencement date, or the Alternate Payee's Benefit commencement date, if earlier. The Marital Portion shall be determined by multiplying the Participant's Accrued Benefit by a coverture fraction (less than or equal to 1.0), the numerator of which is the number of months of the Participant's participation in the Plan earned during the marriage (from January 2, 1968 to August 25, 2006), and the denominator of which is the total number of months of the Participant's participation in the Plan as of the earlier of the Participant's date of cessation of benefit accruals or the date that the

-4-

Alternate Payee commences Alternate Payee's benefits hereunder.

(*Id.*).

**{¶8}** On March 29, 2011, Larry filed a motion to terminate his spousal support effective July 1, 2011 in light of his retirement from First Energy. (Doc. No. 52).

**{¶9}** On May 4, 2011, Larry filed a motion to correct the September 7, 2007 final judgment entry of divorce to conform to the magistrate's decision and to further modify the QDRO to the corrected final judgment entry. (Doc. No. 57). In the motion, Larry argued that the magistrate's decision determined that Joyce was entitled to one half of the pension value *at the time of the divorce*; whereas, the QDRO is based upon the value of the defined benefit plan *at the time of his retirement*. (*Id.*).

**{¶10}** On September 12, 2011, the magistrate issued a decision reducing Larry's spousal support obligation to $700.00 per month, effective July 1, 2011, and ordering him to maintain Joyce as a beneficiary to his life insurance policy. (Doc. No. 64). Thereafter, Larry filed objections to the magistrate's decision. (Doc. No. 65).

**{¶11}** On October 4, 2011, Larry filed a motion for summary judgment concerning the modification of the QDRO. (Doc. No. 68).

{¶12} On February 8, 2012, the trial court held a hearing on the objections. On February 27, 2012, the trial court denied Larry's motion to modify the QDRO; however, the trial court reduced his spousal support to $500.00 per month, effective March 1, 2012, and eliminated his obligation to maintain Joyce as a life insurance beneficiary. (Doc. No. 76).

{¶13} On March 2, 2012, Larry filed a motion for clarification of the trial court's February 2012 judgment entry. (Doc. No. 77). In particular, Larry sought a credit towards his spousal support obligation since he had been paying Joyce $2,500.00 per month during the pendency of his motions, even though the magistrate reduced his spousal support to $700.00 per month, effective July 1, 2011. (*Id.*)

{¶14} On March 23, 2012, the trial court overruled the motion, finding that it had considered the spousal support paid to Joyce during the pendency of the motions for purposes of its final decision to reduce Larry's spousal support obligation to $500.00 per month. (Doc. No. 78).

{¶15} On March 27, 2012, Larry filed a notice of appeal. (Doc. No. 79). Larry now appeals raising three assignments of error. We elect to combine Larry's first two assignments of error for discussion.

**Assignment of Error No. I**

**The Trial Court erred in not considering the spousal support paid at the rate of $2,500.00 per month, which is post divorce**

**[sic] and pre-retirement amounts, and failing to credit the Obligor/Appellant for $20,000.00 in support paid from the date of retirement, July 1, 2011, through March 1, 2012 as well as sums that may be paid until final determination.**

**Assignment of Error No. II**

**The Trial Court abused its discretion to continue an Order of Spousal Support beyond the date of retirement, thereby giving the Obligee/Appllee [sic] an unfair windfall over that of the Obligor/Appellant.**

{¶16} In his first assignment of error, Larry argues that the trial court erred by failing to credit him for the $20,000.00 in spousal support he paid to Joyce from July 1, 2011, the date of his retirement, to February 2012, the filing of the final judgment entry, during the pendency of his motions.

{¶17} In his second assignment of error, Larry argues that the trial court abused its discretion by ordering him to pay spousal support after his retirement. Specifically, Larry argues that the trial court penalized him for remarrying after his divorce by using his new wife's income against him and by failing to consider Joyce's failure to reduce her living expenses.

{¶18} Spousal support may not be modified unless the divorce decree expressly reserved jurisdiction to make the modification *and* there is a substantial change in circumstances that was not contemplated at the time of the original divorce decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, paragraph two of the syllabus. Once the trial court determines that the

spousal support *can* be modified, it must consider whether it *should* be continued in light of the changed circumstances; and if so, at what amount? *Bingham v. Bingham*, 9 Ohio App.3d 191, 193 (10th Dist.1983). To answer these latter questions, the trial court's discretion is guided by all the relevant facts, including those factors in R.C. 3105.18(C)(1) related to the change in circumstances. *Id.*; *Kucmanic v. Kucmanic*, 119 Ohio App.3d 609, 613-614 (8th Dist.1997).

{¶19} A trial court's decision concerning a modification of spousal support will not be reversed on appeal absent an abuse of discretion. *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011-Ohio-38, ¶ 9 (3d Dist.). An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard of review, a reviewing court may not merely substitute its judgment for that of the trial court. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶20} The parties do not dispute that the trial court had the authority to modify the spousal support here since the divorce decree specifically provided that Larry's retirement from First Energy would be considered a substantial change in circumstances. (Doc. No. 37). Larry argues that the trial court abused its discretion by factoring his new wife's income for purposes of his spousal support obligation. "While a new spouse's income cannot be considered in determining an

obligor's ability to pay spousal support, the court may consider the fact that the obligor directly benefits from sharing living expenses with his new wife." *Preseren v. Preseren*, 8th Dist. No. 96431, 2011-Ohio-5181, ¶ 16; *Manzella v. Manzella*, 12th Dist. No. 20618, 2005-Ohio-4519, ¶ 12. Although the magistrate did mention Larry's new wife's social security benefits, the focus of the magistrate's inquiry was the fact that Larry's new wife was contributing to the household finances, which is permissible. (Sept. 12, 2011 Decision, Doc. No. 64). The magistrate noted that Larry's monthly retirement income would be at least $3,863 per month, not including any of his new wife's benefits; whereas, Joyce's monthly retirement income would be at most $1,634 per month. (*Id*.).[1] The record also demonstrates that Joyce had several health issues, which affected her ability to obtain employment, including: genetic disc disease; high blood pressure; allergies; two back surgeries in December 2005 and January 2006; carpal tunnel syndrome; and, an ankle injury. (Aug. 25, 2006 Tr. at 14-16, 46-52). Joyce also took several prescription medications. (*Id*. at 54). Consequently, the magistrate determined that a post-retirement $700.00 per month spousal support order was reasonable in light of the parties' relative finances, and the parties' 38-year marriage. (*Id*.). The trial court modified the magistrate's decision and further reduced Larry's spousal support to $500.00 per month effective March 1, 2012.

---

[1] The record also indicates that, in two years when Joyce turns 65 years old, she will receive $700 per month in social security benefits; if she applied for those benefits now, she would get around $400 per month. (June 17, 2011 Tr. at 24, 37-39, 41, 83).

(Feb. 27, 2012 JE, Doc. No. 76). We cannot conclude that this was unreasonable in light of the circumstances and the parties' 38-year marriage.

{¶21} Larry also argues that the trial court ignored Joyce's failure to reduce her costs of living for retirement purposes. This argument is meritless since the magistrate's decision specifically states that "[t]here appears to be areas where [Joyce] could reduce her expenses." (Sept. 12, 2011 Decision, Doc. No. 64). Aside from that, the trial court further reduced Larry's spousal support obligation, which may, in fact, be partly due to Joyce's failure to reduce her retirement living expenses. While the trial court did not expressly state that it considered this issue, it was raised in Larry's objections and likely was considered by the trial court as one of the relevant facts under R.C. 3105.18(C), as the trial court indicated. (Feb. 27, 2012 JE, Doc. No. 76).

{¶22} Larry next argues that the trial court erred by failing to give him a credit for the $20,000.00 in spousal support he paid to Joyce during the pendency of his motion to terminate spousal support. We disagree. Larry's argument is essentially that the trial court should have made its modification of spousal support retroactive to July 1, 2011, his retirement date. While retroactive modification of a spousal support order is the better practice in most cases, a trial court's decision on this issue rests within its sound discretion. *Bowen v. Bowen*, 132 Ohio App.3d 616, 640 (9th Dist.1999). The trial court's decision to make its modified spousal

support order prospective, not retroactive, was reasonable in this case. Larry would have been entitled to a sizeable credit had the trial court retroactively applied its modified spousal support order to July 1, 2011. Had the trial court retroactively applied its modified spousal support order, as Larry wanted, Joyce would have been without spousal support, *her only source of income*, for an extended period of time after March 1, 2012, creating a substantial financial hardship for Joyce. Furthermore, the trial court, in its entry denying Larry's motion for clarification, stated that it reduced Larry's monthly spousal support obligation to $500.00, in part, due to the spousal support Larry paid during the pendency of his motion. (Mar. 23, 2012 Entry, Doc. No. 78); (Feb. 8, 2012 Tr.). Under these circumstances, the trial court decision to modify Larry's spousal support *prospectively*, effective March 1, 2012, did not constitute an abuse of its discretion.

{¶23} Larry's first and second assignments of error are, therefore, overruled.

## Assignment of Error No. III

**The trial court erred in overruling the Defendant's motion to revise or modify the QDRO to conform to the parties' original intent in treating Defendant's motion a 60 B motion.**

{¶24} In his third assignment of error, Larry argues that the trial court erred by denying his motion to modify the QDRO to conform to the parties' original

intent as expressed in the magistrate's decision and subsequent final entry of divorce. Specifically, Larry argues that Joyce was entitled to one-half of the value of his pension as of August 25, 2006, which the magistrate estimated at $1,394.75 per month. Larry argues that the QDRO that was originally filed employs a coverture formula that gives Joyce a higher monthly benefit by figuring his years of service beyond the August 25, 2006 value date.

**{¶25}** "A division or disbursement of property or a distributive award * * * is not subject to future modification by the court." R.C. 3105.171(I). However, a trial court can *clarify* the meaning of an ambiguous division of a retirement plan in a final divorce decree without violating R.C. 3105.171(I). *Kelley v. Kelley*, 3d Dist. Nos. 4-04-28, 4-04-32, 2005-Ohio-2355, ¶ 16, citing *McKinney v. McKinney*, 142 Ohio App.3d 604, 608 (2d Dist.2001), citing *Weller v. Weller*, 115 Ohio App.3d 173, 179 (6th Dist.1996). More specifically, a trial court may modify a QDRO to be consistent with the divorce decree without violating R.C. 3105.171(I). *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, ¶ 26 (2d Dist.). "An ambiguity arises 'when a provision in an order or decree is reasonably susceptible of more than one meaning.'" *Kelly* at ¶ 16, quoting *McKinney* at 609.

**{¶26}** We initially note that the record fails to demonstrate that the trial court treated Larry's motion as a Civ.R. 60(B) motion. Rather, the trial court denied Larry's motion to modify the QDRO, because it concluded that: (1)

language of the QDRO was not clearly inconsistent with the language of the final divorce decree; and, (2) the parties extensively negotiated and jointly approved the language of the filed QDRO almost five years ago.

{¶27} Upon independent review, we agree with the trial court that the QDRO's language is not clearly inconsistent with the language of the final divorce decree. The final judgment entry of divorce provided that "[Joyce] shall receive one half of [Larry's] FirstEnergy Defined Benefit Plan as of August 25, 2006 by a [QDRO]." (Doc. No. 37). The filed QDRO utilizes a typical coverture formula to determine the value of Joyce's share of the pension benefit, using August 25, 2006 as the end date for Larry's months of service earned during the marriage. (Doc. No. 48). The magistrate's calculation of Joyce's estimated monthly pension benefit was not incorporated into the final divorce decree. (Doc. No. 37). Any disagreement between the magistrate's decision and the trial court's final judgment creating an ambiguity could have been resolved years ago, by filing an appropriate motion, by filing a direct appeal, or even by the parties clarifying the ambiguity in the QDRO. In fact, Larry's attorney modified the language of the filed QDRO and approved the final version. (Doc. Nos. 44, 48). Since the language of the QDRO was not clearly inconsistent with the final judgment entry of divorce and Larry agreed to the final QDRO language, we cannot find that the trial court erred by denying Larry's motion to modify the QDRO.

**{¶28}** Larry's third assignment of error is, therefore, overruled.

**{¶29}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**